HAWTHORNE, Justice
 

 (dissenting).
 

 I am in full accord with the holding by the majority that “ * * * the instrument in controversy was' * * * a giving of a thing in payment within the purview of Article 2655 of the Revised Civil Code”, and in fact all parties concede this, as shown by the pleadings, but I do not agree that it is subject to attack for lesion-beyond moiety.
 

 Article 1861 of the Civil Code, found under Title IV, “Of Conventional Obligations”, Chapter 2, Section 2, Paragraph 10*
 
 *877
 
 '“Of Lesion”, provides in clear and explicit language that
 
 in only Huo cases
 
 will the law release a person of full age who is under no incapacity against the effect of his voluntary contracts on account of lesion, these two cases being (1)
 
 partitions,
 
 under facts with which we are not here concerned, and (2)
 
 sales of immovable property
 
 if the price given is less than one-half of the value of the thing sold.
 

 The following provision of Article 1863 ■emphasizes the intention of the redactors •of the Code to limit the kinds of contracts which may be rescinded for lesion to the two enumerated in Article 1861: “Persons of full age are relieved for lesion
 
 in no •other contracts
 
 than those above expressed, except as hereinafter provided regarding the contract of exchange.” (As amended by Act 280 of 1940.) (All italics mine.)
 

 Article 1863 prior to its amendment read as follows:
 

 “Persons of full age are relieved for lesion in no other contracts than those ■above expressed,
 
 not. even in exchange,
 
 which bears some resemblance to the contract of sale.”
 

 The language of this article prior to'its .amendment shows that the drafters of the Code were so intent upon emphasizing the limitations placed on rescission of contracts for lesion, and were so concerned with making the cases provided for in Article 1861 exclusive, that they made a statement apparently contradictory to other provisions of the Code. In Title VIII, which is styled “Of Exchange”, we find Article 2664, which provides that the rescission of the contract of exchange on account of lesion is not allowed in such contracts except in the following two cases — a contract in which one party gives immovable property to another in exchange for movable property, and a contract of exchange where the balance has been paid in money or in movable property. In these instances, the person having given the immovable estate may demand a rescission of the contract, and the party who has paid such balance may also demand a rescission. To correct the apparent inconsistency between these provisions and Article 1863, the Legislature by Act 280 of 1940 amended Article 1863 as set out hereinabove. See, The Louisiana Legislation of 1940, 3 La.L.Rev. 98, 105.
 

 In spite of the lucid, positive language of Articles 1861 and 1863, the majority of the court has extended their meaning by interpreting them in connection with another article of the Code. The type of law exemplified in these articles is not susceptible of extension by interpretation, and an extension to other contracts of the rule which limits rescission on the ground of lesion to certain contracts, in my opinion, is not a proper interpretation of the rule. Domat says in his excellent treatises on interpretation of the civil law:
 

 “The rules of law, whether natural or arbitrary, are of three kinds. Some of them are general, which agree to all matters; others are common to several mat
 
 *879
 
 ters, but not to all;
 
 and many are peculiar only to one matter, and have no relation to others.
 
 For example, these rules of natural equity, that we must do wrong to no man, that we ought to render to every one what is his due, are general, and belong to all sorts of matters. This rule, that agreements made between parties are to them in the place of laws, is common to several matters; for it agrees to all kinds of contracts, covenants, or pacts; but it has no relation to testaments, nor to several other matters.
 
 And the rule for making void a sale, in which any one of the parties is damaged more than half of the just price, is a rule peculiar only to the contract of sale.
 
 So that, in the use and application of the rules of law,
 
 it is necessary to discern in every one its limits and its extent.
 

 “All these rules cease to have their effect, not only
 
 when they are drawn beyond their limits, and applied to matters to which they have no manner of relation,
 
 but likewise when, in the application of them to the matters to which they belong, they are either falsely or wrongfully applied, contrary to the true intent of them. * * * ” Domat, The Civil Law in Its Natural Order (Strahan’s tr., 1861), Tit. I, Sec. I, nos. 12, 13, pp. 110, 111.
 

 “ * * * it is of importance, in the study and application of the laws, to observe and to distinguish the rules which are common to all matters without distinction; those which extend to several matters, but not unto all;
 
 and those which are peculiar only to one;
 
 that we may avoid falling into the error, to which many persons are liable, of extending a rule that is peculiar to one matter to another, where it has no use, and even where it would be false. * * * ” Domat, A Treatise of Laws (Strahan’s tr., 1861), Ch. XII, nos. 18, 19, pp. 88, 89.
 

 It is the express opinion of one writer that the kind of law represented by Article 1861 cannot serve as a basis for prolongation. Franklin, Equity in Louisiana: The Role of Article 21, 9 Tulane L.Rev. 485, 501.
 

 The courts of this state in at least two cases have shown by their language that they recognized the unusual character of the provisions of our law permitting lesion, and have shown that they will not allow an extension of the concept of lesion even by a liberal application of it in the cases in which it is permitted.
 

 In Smith v. Huie-Hodge Lumber Co., Ltd., 129 La. 28, 55 So. 698,
 
 700,
 
 this court said:
 

 “A
 
 lesion suit, at best, when unaccompanied, as in the present case, by any suspicion of actual fraud, does not recommend itself to a court of justice. It calls upon the court to set aside a contract to which parties fully capable of contracting, and not alleging any actual error or fraud, have deliberately consented.
 
 * *
 
 * ”
 

 
 *881
 
 And the Court of Appeal, First Circuit, in Bourgeois v. Martin, 5 La.App. 321, said:
 

 “The right to avoid a sale for lesion originated under the Roman law. It was at first recognized by the old French jurisprudence and then abandoned, but when the French Code was adopted it was reestablished, though in a much modified form. The compilers of our own Code, in Louisiana, with slight changes, made it a part of our own system; hence the articles in Paragraph 10, Section 2, Chapter 2 of the fourth title in our Civil Code. Baudry-Lacantinerie, one of the most renowned among the French civil law commentators, whose opinions have always been respected and often quoted by the courts of this state, says in his ‘Precis de Droit Civil’ that the Civil Code perhaps made a backward step in borrowing this system from the Roman law, and adopting it as part of the law of France, though modified in some of its details. The reasons given to justify lesion as a cause for the rescission of sales of immovables are very weak. The lawmaker seems to have considered that the owner who sells his property for less than one-half its value accepts such an unacceptable price under the influence of some moral constraint to which it is impossible for him to resist. He needs money and must have it by selling at any price. His consent thus given is considered unreasonable and the law comes to his rescue by authorizing him to demand a rescission of the sale.
 

 “On the other .hand, it may be said that the purchaser has the right to assume that the owner is endowed with reason, has the liberty of contract and is free to do what he pleases with his property as long as he does not infringe • upon the rights of others, but that such purchaser, under this paternalistic system, is never free of the danger of a demand on the part of the owner for rescission on account of lesion.
 

 “It is, however, the law, and courts should construe and enforce it, regardless of its wisdom or of the motives which induced the lawmaker to adopt it. But in its enforcement proof of the value of the property must be strong and conclusive. In the case of Demaret v. Hawkins, 8 [La. App.] 483, the court says:
 

 “ ‘The right to rescind a sale for lesion beyond moiety is the only restraint on the liberty of the citizen to bind himself or his property according to the dictate of his own judgment, and the evidence relied on to establish that right should be peculiarly strong and conclusive.’ ”
 

 Aside from the matter of the proper method of interpretation of the Code, some doubt has been expressed as to the propriety of rescission of contracts of giving in payment for lesion. The French commentator referred to in the foregoing case has argued that the considerations which prompted the authors of the French Code to allow rescission of- sales of immovables for lesion do not exist as to a dation en paiement. He points out that,.
 
 *883
 
 in the eyes of the authors of the Code, the owner who consents to sell his immovable for a lower price than half of the true value of it is acting under the pressure of a great need of money, so that it is proper to protect him- against the buyer who uses the circumstances to take advantage of him. On the other hand, such is not the situation of the debtor who relieves himself by giving an immovable in the place of a sum of money which he owes. To avoid all moral constraint and in order to be sure of obtaining the real value of his immovable, he has only to abstain from resorting to the dation en paiement and to let his property be seized. See Baudry-Lacantinerie et Barde, Traite théorique et pratique de droit civil XIII, Des Obligations II (3e ed. 1907), no 1688, pp. 795, 796.
 

 A writer in this state discusses the problem which the court has before it in the instant case, and'takes the same view as I do. He says:
 

 “The principle of rescission of sales for lesion does not apply to a dation en paiement in France, since lesion
 
 is
 
 not a vice of consent nor a general contract rule,
 
 but an exception which must be restricted in its application.
 
 The question of whether or not rescission for lesion beyond moiety applies to giving in payment in Louisiana is somewhat in doubt. According to Poth-ier, the contract of dation en paiement should be subject to rescission for lesion beyond moiety. Thus, the question resolves itself into a determination of the intention of the drafters of the Louisiana Civil Code either to adopt or reject the opinion of Pothier in this respect. It is-quite possible that the question did not occur to the Louisiana drafters.
 
 Nevertheless, the provisions of the Louisiana Civil' Code on lesion beyond moiety should put this question at rest. Article 1861 states that lesion beyond moiety is available in only two cases, namely, sale and partition.
 
 In addition, by way of emphasis, Article 1863 provides that rescission for lesion may be had in
 
 no other contracts.
 
 Furthermore, the considerations upon which lesion is applied to sales have no justification in a giving in payment.” Comment, 14 Tulane L.Rev. 263, 270.
 

 In view of all these considerations, it is incomprehensible that the majority of • this court could conclude that the general,, broad language in Article 2659 shows an intention on the part of the redactors of the Code to extend the concept of lesion to another contract, giving in payment, in-spite of the explicit, restrictive language-used by them to limit the application of the concept to the contracts specifically enumerated in Articles 1861 and 1863. Great inadvertence or oversight may be attributed to the redactors by their drafting of Article 2659, but I can see by it no specific intention to extend the exclusive provisions of Articles 1861 and 1863.
 

 It is significant to me that the articles of the Code dealing with lesion as to partitions and sales of immovable property set out in detail the respective rights of the
 
 *885
 
 parties in the event lesion beyond moiety is found to exist; likewise in the two cases in which lesion is allowed in contracts of exchange the rights of the parties are expressly defined and are limited to a rescission of the contract. On the other hand, in the last chapter of Title VII, “Of the Giving in Payment”, which just precedes Title VIII, “Of Exchange”, no mention is made of lesion beyond moiety, and there is no provision dealing with the rights of the parties to the giving of a thing in payment although lesion may exist.
 

 Assuming, however, that the rules governing the rights of parties in sales apply to the rights of the parties in a dation en paiement, let us now examine the rules and the rights of the parties where lesion beyond moiety is found to exist in a sale of immovable property, as set forth in Articles 1877 and 1878 of the Civil Code. 'These articles provide, among other things, that the purchaser of such immovable may elect either to rescind the sale or to have it confirmed on paying the full value, and that, if the purchaser elects to rescind the sale, “the seller shall repay the purchase money which he has received”.
 

 Under the rule which the majority says is applicable, if the bank in the instant case elects to rescind the sale, is it entitled to have its obligation, secured by a judicial mortgage, reinstated? And, if so, should the judicial mortgage be reinstated as of the date of its cancellation, and, if so reinstated, should it cover and operate against other property owned by Jones on the date the present contract was entered into, notwithstanding the fact that this other property has been acquired by third parties on the faith of the public records showing the cancellation of the mortgage? Further, how should the tax adjudications themselves he adjusted? Certainly the bank did not pay to Jones any sum of money which he, the seller, can return as the purchase price to comply with the provision of the Code that “the seller shall repay the purchase money which he has received” in the event the purchaser elects to rescind. It may be that it is the intention of the majority for Jones to repay the full amount of the judicial mortgage, including all interest, costs, and attorney’s fees, as well as the amount paid by the bank for the purpose of redeeming the property, but, if so, I am unable to find any provision of the law that authorizes or permits such a disposition, either under the articles dealing with lesion or under those dealing with exchange or under those dealing with the giving of a thing in payment.
 

 Since I consider that the contract here is not subject to attack for lesion beyond moiety, it is not necessary for me to express an opinion on the question of whether the value of the mineral rights should be considered in determining the value of an immovable as of the date of the sale when an act of sale is attacked for lesion beyond moiety.
 

 I respectfully dissent.